J-S39022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NAFIS ANTUAN FAISON, | |
| Appellant | No. 2037 MDA 2015 |

Appeal from the Judgment of Sentence March 25, 2015
in the Court of Common Pleas of Lycoming County
Criminal Division at No.: CP-41-CR-0000126-2014

BEFORE:  STABILE, J., PLATT, J.[*], and STRASSBURGER, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MAY 17, 2016**

Appellant, Nafis Antuan Faison, appeals *nunc pro tunc* from the judgment of sentence[1] imposed following his jury conviction of possession with intent to deliver a controlled substance (PWID)[2] and related charges. On appeal, Appellant challenges the sufficiency and weight of the evidence supporting his PWID conviction.  We affirm.

The trial court aptly summarized the factual history of this case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant purports to appeal from the order denying his post-sentence motion; we have corrected the caption to reflect that his direct appeal properly lies from the judgment of sentence.  ***See Commonwealth v. W.H.M., Jr.***, 932 A.2d 155, 158 n.1 (Pa. Super. 2007).

[2] 35 P.S. § 780-113(a)(30).

This matter arises from police recovery of about 500 grams of cocaine in apartment #2 (Apartment) at 2017 W. 4th Street in Williamsport (Property) on December 12, 2013. The evidence at trial established the following. The Apartment belonged to Demetrius Simpson ([Simpson]) who resided there with his [nine] year old son. Simpson's one[-]year[-]old daughter stayed with him about three days per week. . . . On December 12, 2013, upon request, Simpson allowed [Appellant] to spend the night at his apartment. When at his apartment, [Appellant] typically stayed in the dining room and usually slept on the couch.

On December 12, 2013, [Appellant] was the subject of a police investigation.[3] Police learned that the Property was a possible location for [Appellant]. Police surveilled the Property. Police observed individuals going in and out of the Apartment. They appeared to stay only a few minutes. According to Simpson, [Appellant] had four visitors at the [A]partment on that date, two of whom Simpson knew; one stayed for [twenty]-[thirty] minutes, and another, [Joshua] Colley (Colley), stayed for only [ten]-[fifteen] minutes. After observing Colley leave the Apartment, [p]olice performed a traffic stop and a "[T]erry frisk"[4] on Colley. This revealed a clear plastic baggy containing cocaine in Colley's left front pocket and one Alprazolam pill in his front pocket of his jeans. [After police placed Colley in handcuffs, he admitted that Appellant was at the Apartment].

[At approximately 8:45 p.m.,] [u]pon believing that [Appellant] was in the Apartment, [p]olice decided to make contact with the occupants of the second floor of the residence. Police knocked and banged loudly on the door of the Apartment, and announced their presence. "[C]haos erupted as [Appellant] jumped out a second floor window." A loud crash or bang-like crash noise sounded from the front of the house.

---

[3] The investigation was based on a fugitive warrant for Appellant. (**See** N.T. Trial, 1/21/15, at 70).

[4] **Terry v. Ohio**, 392 U.S. 1 (1968).

[Appellant] jumped out of the second floor bedroom window and fled the Apartment. The only remaining individuals police found in the [A]partment were Simpson and his [nine] year old son. Trooper Lancer Thomas heard police yell that there was a runner. The runner was [Appellant]. No other runners were observed. Tpr. Thomas chased [Appellant]. After a foot chase, police apprehended [Appellant]. Police conducted a search of [Appellant] incident to arrest and found $3,879.00 on [Appellant's] person, a small plastic pill type bottle containing three oxycodone pills and a small bag of marijuana. Police recovered $3,879.00 in his front left pocket in the following denominations: eleven one[-]hundred dollar bills, nine fifty dollar bills, [and 116] twenty dollar bills. In the right pocket there was one five dollar bill and four one dollar bills.

Police searched the Apartment and found large quantities of drugs. In the dining room/living room area, police found a black backpack sitting on the couch. Inside the black backpack, police discovered a grocery bag with 179.16 grams of cocaine, another package with 319.86 grams of cocaine and a scale containing cocaine residue. Police also found a tan jacket hanging on the dining room table which contained 13.65 grams of cocaine in the front right pocket of the jacket. [Appellant] had been staying in the dining room area and typically slept on the [couch] where the backpack was found. Police found the backpack on the same couch where an iPhone was charging. The telephone number for the iPhone was the same number listed as a contact for "Nore New" on Simpson's phone. Simpson identified [Appellant] as "Nore." Simpson testified that the backpack, jacket and iPhone did not belong to him or his children. Simpson allowed others to stay at his Apartment on other occasions, and those people would usually sleep on the couch. However, there was no testimony that anyone other than [Appellant] was staying the night on December 12, 2013.

(Trial Court Opinion, 7/13/15, at 2-4) (record citations, footnotes and some quotation marks omitted).

On January 21, 2015, the jury found Appellant guilty of the above-mentioned offenses. On March 25, 2015, the trial court sentenced Appellant to an aggregate term of not less than five nor more than ten years'

incarceration. It entered an opinion and order denying Appellant's timely post-sentence motion on July 13, 2015. On November 17, 2015, in response to Appellant's petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, the court entered an order reinstating his direct appeal rights *nunc pro tunc*. This timely appeal followed.[5]

Appellant raises two issues for our review:

> I. Whether the Commonwealth failed to introduce sufficient evidence that [Appellant] constructively possessed the cocaine found in another's residence[?]
>
> II. Whether the verdict rendered by the jury was contrary to the weight of the evidence presented at trial[?]

(Appellant's Brief, at 7) (unnecessary capitalization omitted).[6]

In his first issue, Appellant challenges the sufficiency of the evidence supporting his PWID conviction. (**See id.** at 12-16). Specifically, he argues the Commonwealth failed to establish his constructive possession of the cocaine found in the backpack and tan jacket at the Apartment. (**See id.**). This issue does not merit relief.

---

[5] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on January 25, 2016. The court issued an opinion on January 28, 2016, in which it relied on its previous opinion entered July 13, 2015. **See** Pa.R.A.P. 1925.

[6] The Commonwealth filed a letter advising that it would not be filing a brief and that it relies on the opinion and order of the trial court. (**See** Commonwealth's Letter, 3/16/16).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Giordano*, 121 A.3d 998, 1002-03 (Pa. Super. 2015),

*appeal denied*, 131 A.3d 490 (Pa. 2016) (citations omitted).

The Controlled Substance, Drug, Device and Cosmetic Act defines the

crime of PWID as follows:

(a)  The following acts and the causing thereof within the Commonwealth are hereby prohibited:

*     *     *

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

"To convict a person of PWID, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it." *Commonwealth v. Bricker*, 882 A.2d 1008, 1015 (Pa. Super. 2005) (citation omitted). Where a defendant was not in actual physical possession of the drugs recovered, the Commonwealth is required to establish that he had constructive possession of them. *See Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012), *appeal denied*, 63 A.3d 1243 (Pa. 2013).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Id.* (citation omitted). "For the Commonwealth to prove constructive possession where more than one person has access to the contraband, the Commonwealth must introduce evidence demonstrating either [the defendant's] participation in the drug related activity or evidence connecting [the defendant] to the specific room or areas where the drugs were kept." *Commonwealth v. Vargas*, 108 A.3d 858, 868 (Pa. Super. 2014) (*en banc*), *appeal denied*, 121 A.3d 496 (Pa. 2015) (citation and internal quotation mark omitted).

Also relevant to Appellant's sufficiency claim is the precept that "evidence of flight is generally admissible to support an inference of consciousness of guilt[.]" **Commonwealth v. Johnson**, 910 A.2d 60, 66 (Pa. Super. 2006), *appeal denied*, 923 A.2d 1173 (Pa. 2007) (citation omitted).

Here, the record reflects that Appellant was one of two adults at the Apartment where a large quantity of cocaine was found; that he was staying at the residence as an overnight guest; and that a number of visitors, including Joshua Colley who had cocaine on his person, left the residence after staying only a brief period of time. (**See** N.T. Trial, 1/21/15, at 20-21, 31, 87, 90, 92-94). When police knocked and announced their presence at the Apartment, Appellant jumped out of a second-story window and ran away from the residence. (**See id.** at 73, 96, 102-03). Trooper Thomas pursued him on foot, and when he advised that he was a member of law enforcement, Appellant did not stop; he instead "ran very fast." (**Id.** at 104; **see id.** at 103). Police apprehended him and found nearly $4,000.00 in various denominations of cash in his pants pocket, along with marijuana and Oxycodone pills. (**See id.** at 132-34, 138).

In a search of the Apartment, police recovered a large amount of cocaine from a partially open backpack on the sofa where Appellant slept, and additional cocaine in the tan jacket he wore earlier that day. (**See id.** at 27, 29-30, 93-94, 108, 147). The backpack and jacket were located in the

same area of the Apartment where Appellant's iPhone was charging. (*See id.* at 74-75, 155-56, 161).

Based on the totality of the circumstances, and viewing the evidence in the light most favorable to the Commonwealth, we determine that there was ample evidence indicating Appellant's involvement in drug activity and "connecting [him] to the specific room or areas where the drugs were kept." *Vargas*, *supra* at 868; *see also Giordano*, *supra* at 1002; *Brown*, *supra* at 430. Thus, we conclude that the evidence fully supports the jury's determination that Appellant constructively possessed the cocaine found in the Apartment. Accordingly, Appellant's first issue does not merit relief.

In his second issue, Appellant challenges the weight of the evidence supporting his PWID conviction,[7] claiming that there was no evidence connecting him to the backpack, and the only witness linking him to the tan jacket, Simpson, had a vested interest in the outcome of the trial. (*See* Appellant's Brief, at 16-17). We disagree.

Our well-settled standard of review is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.

> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's

---

[7] Appellant preserved his weight claim by raising it in a post-sentence motion. *See* Pa.R.Crim.P. 607(A)(3).

verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Toritto*, 67 A.3d 29, 35 (Pa. Super. 2013), *appeal denied*, 80 A.3d 777 (Pa. 2013) (citation and quotations marks omitted). "[T]he trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Weathers*, 95 A.3d 908, 911 (Pa. Super. 2014), *appeal denied*, 106 A.3d 726 (Pa. 2015) (citation omitted).

Here, the trial court found that the jury's verdict was in full accord with the evidence and with its sense of justice. (*See* Trial Ct. Op., at 11). The evidence plainly reflected that the cocaine was in the area of the Apartment where Appellant stayed, in and next to his personal possessions, and that he fled from police with drugs and a significant amount of cash on his person. (*See id.* at 10-11). After review of the record, we conclude that the trial court did not palpably abuse its discretion by denying Appellant's weight claim. *See Toritto*, *supra* at 35. Therefore, Appellant's second issue does not merit relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/17/2016